**EXHIBIT A**

TERM SHEET

JUNE 30, 2025 (THE "**EFFECTIVE DATE**")

This Term Sheet (the "**Term Sheet**") summarizes the principal terms and conditions upon which Prime Tex. Lumber, LLC, a Texas limited liability company ("**Lender**"), TexStar Lumber, Inc., a Texas corporation ("**TexStar**"), and Premier Lumber Company, Inc., a Texas corporation ("**Premier**," and along with TexStar, collectively, the "**Borrowers**") shall execute certain documents, subject to confirmatory due diligence and continuing review by each Party's counsel and other advisors, to evidence the transactions described below, which include a proposed debtor-in-possession loan (the "**Loan**") to Borrowers, currently operating as debtors-in-possession under Chapter 11, Subchapter V, of Title 11 of the United States Code (the "Bankruptcy Code") (collectively the "**Proposed Transaction**"). Lender and Borrowers shall each be referred to herein as a "**Party**" and collectively as the "**Parties**."

Except with respect to specific terms and provisions that are specifically identified as binding in this Term Sheet, this Term Sheet does not constitute or evidence a binding agreement between the Parties, nor shall this Term Sheet, or any discussions or course of conduct, impose any obligation or liability on the Parties hereto. A binding agreement with respect to the Proposed Transaction will arise only after a mutually satisfactory Definitive Agreements have been negotiated, executed, and accepted by the Parties, and the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "Bankruptcy Court") has approved the Loan. Notwithstanding the forgoing, this Term Sheet shall evidence the Lender's firm intent to extend the Loan to the Borrowers. The Parties expect that the material terms and conditions of the Proposed Transaction will be as follows:

PART I: NON-BINDING PROVISIONS:

**Purpose:** The Loan is intended to facilitate Borrowers' reorganization and position the Borrowers for a return to operational viability and long-term success in its lumber manufacturing operations. This Term Sheet sets forth certain key terms under which Lender is prepared to proceed, subject to confirmatory due diligence, continuing review by Lender's counsel and other advisors, successful negotiation of the Definitive Agreements, and Bankruptcy Court approval.

The Loan proceeds will be used by Borrowers: (a) to acquire raw materials and inventory; (b) to repair and restore operational functionality of its milling equipment and infrastructure; (c) provide working capital for the Borrowers to operate during their Chapter 11 bankruptcy case pending before the Bankruptcy Court (the "Bankruptcy Cases"); (d) emerge from the Bankruptcy Case; and, (e) potentially, to repay or refinance certain prepetition obligations, including, without limitation, debt secured by a lien on the Borrowers' equipment and/or real estate pursuant to the Borrowers' Plan of Reorganization. The Loan will be structured as a secured loan under Sections 364(c)(3) and (3) of the Bankruptcy Code, and shall also receive super-priority status under Section 364(c)(1) of the Bankruptcy Code.

**Loan Terms:** The Parties anticipate that the Loan shall contain the following terms:

| SUMMARY TERMS AND CONDITIONS ||
|---|---|
| Borrowers | The Borrowers shall be jointly and severally liable for all obligations under the Definitive Agreements, including, but not limited to, the repayment of the principal amount of the Loan, interest thereon, fees, expenses, indemnification obligations, and any other amounts due in connection with the Loan. The Lender shall have the right, subject to the automatic stay set forth in Section 362(a) of the Bankruptcy Code, to proceed against either or both Borrowers in such order and manner as it may elect, and no Borrower shall be released from liability by reason of the failure of the Lender to proceed against any other Borrower or any collateral or guarantor. Notwithstanding the forgoing, the Parties anticipate that the Loan shall be converted to a majority stake in the Reorganized Borrowers pursuant to their confirmed Plan of Reorganization in full and final satisfaction of the Loan. |
| Guarantor(s) | None |
| Facility Type | LOC |
| Principal Amount | $500,000 |
| Interest Rate | 8% |
| Maturity Date | 48 Months |
| Repayment Schedule | No payments for the first 90 days, and interest only payments during the pendency of the Bankruptcy Cases. |
| Collateral | As a condition to the Loan, the Borrowers will grant the Lender: (1) A first priority lien on all post-petition assets of the Borrowers, including inventory, accounts receivable, and proceeds thereof, and (2) A junior (second priority) lien on all prepetition equipment and real estate of Borrowers, subordinated only to valid, perfected prepetition liens, and applicable valid post-petition tax liens.<br><br>The Lender shall also receive a priority administrative claim against the Borrowers' bankruptcy estates to secure the Loan. Subject to the carve-out described below, such super-priority claim shall have priority over and shall be paid ahead of all other unsecured claims asserts in the Bankruptcy Cases.<br><br>Notwithstanding the forgoing, there shall be a carve out in the amount of $75,000 in favor of Borrower's bankruptcy counsel, which shall have priority over the liens and super-priority claim granted to the Lender to secure the Loan. |

| Post-Emergence Equity Conversion | As part of the Borrowers' Plan of Reorganization (the "**Plan**"), the Loan will be convertible into a controlling equity stake in the reorganized Borrowers (the "**Reorganized Companies**"). The Parties intend that: (1) Lender will receive a majority of the common equity of the Reorganized Companies in full satisfaction and discharge of the Loan upon confirmation of the Plan; and (2) the Plan shall cancel all prepetition equity in the Reorganized Companies and issue new equity interests to Lender and other stakeholders as agreed in the Plan. The final terms of the conversion (including equity percentages and governance rights) will be subject to further negotiation and documentation, and shall be binding only upon confirmation of the Plan. |
|---|---|
| Definitive Agreements | The Definitive Agreements will include: (1) a DIP Financing Agreement; and (2) a Motion to Approve DIP Financing to be filed in the Bankruptcy Cases; and (3) any related intercreditor, subordination, or adequate protection arrangements as may be required. |

**Definitive Agreements**: Upon the full execution of this Term Sheet, the Parties will commence to engage in due diligence and the negotiation of transaction documents with the goal of executing mutually satisfactory definitive agreements with respect to the Proposed Transaction (the "**Definitive Agreements**") within seven (7) days of the execution of this Term Sheet. The Definitive Agreements will contain standard provisions, including representations, warranties, covenants, and conditions of the Parties that are customary for transactions of the type described herein. The Parties further acknowledge that the Definitive Agreements may be subject to approval by the Bankruptcy Court.

**Closing; Closing Conditions**: The closing of the transactions contemplated by this Term Sheet (the "**Closing**") will, unless otherwise mutually agreed to by the Parties, be consummated electronically and will take place upon the satisfaction or waiver of the following closing conditions (the "**Closing Date**"), any or all of which may be waived in whole or in part by the Parties in writing:

(a) Each Party's completion of its due diligence investigation, the results of which are satisfactory to such Party in its sole discretion;

(b) The receipt of all third party consents necessary for the consummation of the Proposed Transaction;

(c) The execution by the Parties of the mutually agreeable Definitive Agreements; and

(d) No preliminary or permanent injunction or other governmental order issued by a court of competent jurisdiction or by any

governmental authority, or any law or governmental order promulgated or enacted by any governmental authority will be in effect which could reasonably be expected to make illegal, or to delay or otherwise directly or indirectly restrain or prohibit, the consummation of the transactions contemplated by this Term Sheet.

**Execution Deadline:** This Term Sheet will expire at 5:00 p.m., Central Standard Time on June 30, 2025, unless sooner terminated or extended mutually by the Parties.

**Closing Effective Date:** The anticipated Closing Date of the Proposed Transaction is July 7, 2025; subject to extension by mutual agreement of the Parties.

**PART II: BINDING PROVISIONS:**

**Due Diligence:** Lender shall be entitled to perform financial, operational, legal, and collateral due diligence prior to entering into the Definitive Agreements, including access to all relevant books, records, and personnel of the Borrowers. Borrowers agree to cooperate fully and provide access and materials promptly upon request.

**Governing Law:** This Term Sheet and any dispute arising hereunder shall be governed by the laws of the State of Texas.

**Expenses:** Each Party shall pay its own administrative, accounting, legal, or consulting fees and expenses related to or arising from the negotiation of this Term Sheet or the Definitive Agreements.

**Waiver; Remedies Cumulative:** The rights and remedies of the Parties hereunder are cumulative and not alternative. Neither any failure nor any delay by any Party in exercising any right, power or privilege under this Term Sheet shall operate as a waiver of such right, power or privilege, and no single or partial exercise of any such right, power or privilege shall preclude any other or further exercise of such right, power or privilege or the exercise of any other right, power or privilege.

**Severability:** If any provision of this Term Sheet, or the application of any such provision to any person, entity, or circumstance, is held to be unenforceable or invalid by any court of competent jurisdiction or under any applicable law, the validity and enforceability of the remaining provisions of this Term Sheet shall not be affected thereby. Without limiting the foregoing, the covenants and obligations contained in this Term Sheet shall be construed as separate covenants and obligations, covering their respective subject matters. Each breach of a covenant or obligation set forth in this Term Sheet shall give rise to a separate and independent cause of action.

| | |
|---|---|
| **Modification:** | This Term Sheet may not be amended, supplemented, or otherwise modified except by a unanimous written agreement by the Parties. |
| **No Assignment; Successors and Assigns; No Third Party Rights:** | No Party may assign any or all of its rights under this Term Sheet to any person or entity without the prior written consent of the other Parties. Any attempted assignment or assumption without such written consent shall be null and void and without legal effect. Subject to the foregoing, this Term Sheet shall apply to, be binding in all respects upon and inure to the benefit of the heirs, executors, personal representatives, successors and assigns of the Parties. Nothing expressed or referred to in this Term Sheet shall be construed to give any person or entity other than the Parties any legal or equitable right, remedy or claim under or with respect to this Term Sheet or any provision of this Term Sheet. |
| **Execution:** | This Term Sheet may be executed in two or more counterparts, each of which shall be deemed to be an original copy and all of which, when taken together, shall be deemed to constitute one and the same agreement. The exchange of copies of this Term Sheet and of signature pages by facsimile transmission or electronic mail shall constitute effective execution and delivery of this Term Sheet as to the Parties and may be used in lieu of the original Term Sheet for all purposes. Signatures of the Parties transmitted by facsimile or electronic mail shall be deemed to be their original signatures for all purposes. |
| **Nature of this Term Sheet:** | The provisions of Part II: Binding Provisions in this Term Sheet are intended to be binding upon Lender and Borrowers in accordance with their terms. With respect to all other matters set forth herein, it is understood that: (a) no other provision herein shall be binding on any Party hereto; (b) this Term Sheet sets forth the intentions of the Parties to negotiate, in good faith, the Definitive Agreements and that any legal obligations with respect to such matters shall be only as set forth in the Definitive Agreements when and if executed by Lender and the Borrowers; and (c) that neither Lender (or any affiliate thereof), nor Borrowers shall be responsible for any claims or liability relating to the Proposed Transaction contemplated hereby in the event the Definitive Agreements are not so executed and delivered, except as expressly provided in this Term Sheet. |

*[Signature Page to Follow]*

This Term Sheet is entered into by each of the Parties below, to be effective as of the Effective Date.

**PRIME TEX LUMBER, LLC:**

*[Signature]*
Signature

RANDALL C WASHINGTON
Print name

Chief Operating Officer
Print title

June 30, 2025
Date

**TEXSTAR LUMBER, INC:**

*Karthick Chandrasekaran*
Signature

Karthick Chandrasekaran
Print name

President
Print title

June 30, 2025
Date

**PREMIER LUMBER COMPANY, INC.:**

*Karthick Chandrasekaran*
Signature

Karthick Chandrasekaran
Print name

President
Print title

June 30, 2025
Date

This Term Sheet is entered into by each of the Parties below, to be effective as of the Effective Date.

**PRIME TEX LUMBER, LLC:**

_____
*Signature*

_____
*Print name*

_____
*Print title*

_____
*Date*

**TEXSTAR LUMBER, INC:**

_[signature]_____
*Signature*

KARTHICK CHANDRASEKARAN
*Print name*

PRESIDENT
*Print title*

06/30/2025
*Date*

**PREMIER LUMBER COMPANY, INC.:**

_[signature]_____
*Signature*

KARTHICK CHANDRASEKARAN
*Print name*

PRESIDENT
*Print title*

06/30/2025
*Date*