

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | JOINTLY ADMINISTERED UNDER |
| Premier Lumber Company Inc., et al. | § | Case No. 25-10295 |
| | § | |
| Debtors.[1] | § | |
| | § | Subchapter V |
| | § | |

**FINAL ORDER GRANTING DEBTORS' MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING DEBTOR TO OBTAIN POSTPETITION FINANCING; (II) GRANTING LIENS AND SUPERPRIORITY CLAIMS; AND (III) SCHEDULING A FINAL HEARING PURSUANT TO 11 U.S.C. §§ 105, 362, AND 364(c) AND FEDERAL RULE OF BANKRUPTCY PROCEDURE 4001(c)**

[Relates to Doc. No. 18]

On July 29, 2025, the Court conducted a final hearing on the *Amended Motion for Entry of Interim and Final Orders (I) Authorizing Debtors to Obtain Postpetition Financing; (II) Granting Liens and Superpriority Claims; and, (III) Scheduling a Final Hearing Pursuant to 11 U.S.C. §§ 105, 362, and 364(c) and Federal Rule of Bankruptcy Procedure 4001(c)* [Doc. No. 18] (the "Motion"), filed by Premier Lumber Company Inc. ("Premier Lumber") and TexStar Lumber, Inc. ("TexStar," and together with Premier Lumber, the "Debtors"). The Court finds that notice of the Motion and hearing were proper. After considering the pleadings, evidence, presentations and arguments of counsel, and for the reasons set forth on the record by the Court at the hearing, the Court finds just cause for entry of the following final order (hereinafter, the "Order" or "Final Order"):

**BASED UPON THE RECORD ESTABLISHED AT THE FINAL HEARING, THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:**

---

[1] The jointly-administered Chapter 11 Debtors, along with the last four digits of each such Debtor's federal tax identification number, are: Premier Lumber Company, Inc. (9451); and TexStar Lumber, Inc. (1243).

1

A.  **The Petition Date.** On June 30, 2025 (the "**Petition Date**"), the Debtors commenced the above-styled bankruptcy cases (the "**Bankruptcy Cases**") by filing voluntary petitions under Chapter 11 of Title 11 of the United States Code (the "**Bankruptcy Code**"). Since the Petition Date, the Debtors have remained in possession and control of its assets as debtor-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in the Bankruptcy Cases. The Debtors' cases are being jointly administered. [*See* Order at Doc. No. 23]

B.  **DIP Motion and Interim DIP Order.** On July 1, 2025, the Debtors filed the Motion [Doc. No. 12, subsequently amended at Doc. No. 18]. The Court held an emergency hearing on the Motion on July 3rd, 2025, and subsequently entered an interim order (the "Interim Order") [Doc. No. 28], approving the DIP Term Sheet (attached to the Motion as **Exhibit A**). To the extent that there was any inconsistency between the DIP Term Sheet and the Interim Order, the Interim Order controlled. The Interim Order grants the relief requested in the Motion, to the extent set forth therein, on an interim basis.

C.  **Jurisdiction and Venue.** This Court has jurisdiction to hear the Motion pursuant to 28 U.S.C. §§ 157 and 1334. Consideration of the Motion constitutes a core proceeding under 28 U.S.C. § 157(b). Venue for the Bankruptcy Cases and the contested matter on the Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

D.  **Notice.** Notice of the Final Hearing and the relief requested in the Motion has been provided by the Debtors, as set forth in the Motion and or supplemental certificate of service. Under the circumstances, such notice of the Final Hearing and the relief requested in the Motion constitutes due, sufficient and appropriate notice and complies with Section 102(1) of the

Bankruptcy Code, Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") 2002 and 4001(b), and applicable local rules.

      E.    **Need for Post-Petition Financing.** The Debtors require the DIP Facility (as hereinafter defined): (i) to continue to re-establish business operations at the Sawmill; (ii) for working capital after operations are reestablished; and (iii) to administer and preserve the value of the Debtors' bankruptcy estates. The working capital needed for the Debtors to finance their operations, in order to preserve and maintain the value of its assets and maximize the return for all creditors, is only available to the Debtors pursuant to the terms of the debtor-in-possession financing transaction described in the DIP Facility Documents, attached hereto as **Exhibit A**. The debtor-in-possession financing transaction described in the DIP Facility Documents shall hereinafter be referred to as the "**DIP Facility.**" The documents and instruments governing the DIP Facility shall hereinafter be referred to as the "**DIP Facility Documents.**" In the absence of the availability of the funds under the DIP Facility, the continued operation of the Debtors' businesses would not be possible, and serious and irreparable harm to the Debtors, the Debtors' bankruptcy estates, their creditors, and equity holders would occur.

      F.    **No Credit Available on More Favorable Terms.** The Debtors have been unable to obtain: (i) adequate unsecured credit allowable under Section 503(b)(1) of the Bankruptcy Code as an administrative expense; or (ii) credit with priority over any or all administrative expenses of the kind specified in Sections 503(b) or 507(b) of the Bankruptcy Code, in each case, on more favorable terms and conditions than those set forth in the Term Sheet and this Final Order.

      G.    **Use of Proceeds of the DIP Facility.** Proceeds of the DIP Facility shall be used in a manner consistent with the Budget attached as Exhibit "A" to the DIP Facility Documents, the DIP Facility Documents, and this Final Order.

H.     **Business Judgment and Good Faith Pursuant to Section 364(e).** The terms and conditions of the DIP Facility, as set forth in the DIP Facility Documents, are: (i) fair, reasonable and the best available under the circumstances; (ii) reflect the Debtors' exercise of their prudent business judgment consistent with their fiduciary duties; and (iii) is supported by reasonably equivalent value and consideration. The DIP Facility was negotiated in good faith and at arm's length between the Debtors, Prime Tex. Lumber, LLC (the "**Lender**"), and their respective attorneys. The funds to be extended under the DIP Facility will be advanced by Lender in good faith, and for valid business purposes and uses by the Debtor, and, as a consequence, Lender is entitled to the protection and benefits afforded by Section 364(e) of the Bankruptcy Code. The protections granted pursuant to this Final DIP Order and the DIP Facility Documents will not be affected by any subsequent reversal, modification, vacatur or amendment of this Order, as provided in Section 364(e) of the Bankruptcy Code.

I.     **Relief Essential; Best Interests.** The relief requested in the Motion (and as provided in this Final Order) is necessary, essential, and appropriate to continue the restart of the Debtors' business operations, maintain such business operations during the Bankruptcy Cases, and manage and preserve of the Debtors' bankruptcy estates. It is in the best interests of the Debtors' bankruptcy estates that the Debtors be allowed to obtain credit pursuant to the DIP Facility and the DIP Facility Documents.

J.     **Entry of Final Order.** For the reasons stated above, the Debtors have requested and are entitled to immediate entry of this Final Order pursuant to Bankruptcy Rule 4001(c)(2).

**NOW, THEREFORE,** upon the Motion and the record before this Court with respect to the Motion, including the record made during the Final Hearing, and good and sufficient cause appearing therefore, **IT IS HEREBY ORDERED** that:

1. **Motion Granted.** The Motion is **GRANTED** to the extent and in accordance with the terms and conditions set forth in this Final Order. Any objections to the Motion with respect to the entry of this Final Order, to the extent not withdrawn, waived or otherwise resolved, and all reservations of rights included therein (but subject to all reservation of right included herein), if any, are hereby denied and overruled.

2. **Approval of the DIP Facility Documents.** The DIP Facility Documents are approved on a final basis, and the Debtors are authorized to draw upon and/or receive advances under the DIP Facility, except as otherwise set forth in this Final Order. The Debtors are further authorized to execute and deliver all additional instruments, certificates, agreements and documents which may be required or necessary for the performance by the Debtors in connection with the DIP Facility and DIP Facility Documents, and to effectuate the creation and perfection of the liens and security interests granted pursuant to the DIP Facility Documents (the "**DIP Liens**"). Except as otherwise set forth in this Final Order, the Debtors are hereby authorized and directed to do and perform all acts, satisfy all obligations, and to pay all principal, interest, fees, expenses and other amounts described in the DIP Facility Documents as such become due (collectively with all other obligations under and as defined in the DIP Facility Documents, the "**DIP Obligations**"), which amounts shall not otherwise be subject to further approval of this Court. Except as otherwise set forth in this Final Order, upon execution and delivery, the obligation set forth in the DIP Facility Documents shall represent valid and binding obligations of the Debtors in accordance with their terms enforceable against the Debtors and the bankruptcy estates.

3. **Authorization to Borrow on a Final Basis**. Subject to, and in accordance with, the terms and conditions of the DIP Facility Documents, the Debtors are immediately

5

authorized to borrow up to $500,000.00 (collectively, the "**DIP Facility Amount**") pursuant to the DIP Facility.

4. **Use of the DIP Facility Amount.** Subject to the terms of the DIP Facility Documents and the Budget attached thereto, the DIP Facility Amount shall be used for: (i) any lawful business activity permitted by the DIP Facility documents; (ii) the Carveout; or (iii) any cost or expenses incurred in these Bankruptcy Case that is subject to a current or future Order of this Court.

5. **Successors in Interest.** The DIP Facility Documents shall constitute and evidence the valid and binding obligations of the Debtors and their bankruptcy estates, and shall be enforceable against any successors thereto, including, without limitation, any Chapter 7 or 11 Trustee appointed in the Bankruptcy Cases, and their creditors, in accordance with their terms.

6. **DIP Liens and Superpriority Administrative Claim Status.** Pursuant to Section 364(c)(1) of the Bankruptcy Code, and as a condition to the DIP Facility, the Debtors will grant the Lender: (i) a first priority liens on all post-petition assets of the Debtors, including inventory, accounts receivable, and proceeds thereof, but specifically excluding Chapter 5 claims (i.e., claims arising pursuant to Sections 544 through 550 of the Bankruptcy Code); and (ii) a junior (second priority) lien on all prepetition equipment and real estate of Debtors, subordinated only to valid, perfected pre-petition liens.  For the avoidance of any doubt, the junior liens and superpriority administrative liens granted to the Lender shall not impair or in any way prime valid and perfected pre-petition liens and/or, including, without limitation, the liens and security interests of Byline Bank. The Lender shall also receive a super-priority administrative claim against the Debtors' bankruptcy estates to secure the DIP Facility. Subject to the carve-out described below, such super-

priority claim shall have priority over and shall be paid ahead of all other unsecured claims asserted in the Bankruptcy Cases.

7. **Carve Out.** Notwithstanding anything to the contrary in this Final Order, there shall be a carve out in the amount of $75,000 in favor of Borrower's bankruptcy counsel and the subchapter v trustee's fees, which shall have priority over the liens and super-priority claim granted to the Lender to secure the DIP Facility.

8. **Tax Liens.** Notwithstanding anything to the contrary in the Debtors' Motion, the Interim Order thereon [Doc. No. 28], the Debtors' use of cash collateral, the DIP Term Sheet, or with any of the DIP Facility Documents, or any other agreements approved hereby, any statutory ad valorem tax liens ("Tax Liens") on pre- and post-petition assets of the Debtors held by the Hardin County ad valorem taxing authorities shall neither be primed by nor made subordinate to any liens granted to any party hereby to the extent such Tax Liens are valid, senior, perfected, and unavoidable and, under applicable non-bankruptcy law, are granted priority over a perfected security interest or lien; *provided*, *however*, that the Debtors reserve the right to: (i) investigate whether the Tax Liens are valid, senior, perfected, unavoidable, and/or granted priority over other perfected security interests or liens; and (ii) object to / challenge any Tax Liens subject to such investigation.

9. **Authorization to Use Proceeds of DIP Facility Documents.** Pursuant to the terms and conditions of this Final Order and the DIP Facility Documents, the Debtors are authorized to use the DIP Facility for all valid business purposes, including, without limitation, as specifically set forth in the Budget. The Debtors' rights to use the extensions of credit under the DIP Facility shall terminate upon the earlier of: (i) the occurrence of an uncured Event of Default (as such term is defined in the DIP Facility Documents); or (ii) upon the occurrence of the Maturity Date.

10. **Fiduciary Duties and No limitation on Fiduciary Out.** Notwithstanding anything to the contrary in this Order, the DIP Term Sheet, or any related documents, nothing in this Final Order or the DIP Facility, shall limit or restrict the Debtors or their respective officers, directors, or members from fulfilling their fiduciary duties under applicable law—including taking any action, or refraining from taking any action, that would be inconsistent with the exercise of such fiduciary duties in accordance with applicable law. Without limiting the foregoing, nothing in the DIP Facility Documents shall prevent the Debtors or their officers or directors from considering, investigating, pursuing, proposing, or supporting any sale, restructuring, Subchapter V Plan, or transaction that may be proposed or advanced by any party, to the extent permitted under applicable law and consistent with the exercise of their fiduciary duties.

11. **Debt to Equity Conversion.** The DIP Facility Documents include a "Debt to Equity Conversion" option that the Lender may choose, but is not required, to exercise in connection with the Debtors' to be filed Plan of Reorganization. The Lender's option is hereby approved.

12. **No Third Party Rights.** Except as explicitly provided for herein, this Final Order does not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect, or incidental beneficiary.

13. **Inconsistency.** In the event of any inconsistency between the terms and conditions of the DIP Facility Documents and of this Final Order, the provisions of the Final Order shall govern and control.

14. **Enforceability.** This Final Order shall constitute findings of fact and conclusions of law pursuant to the Bankruptcy Rule 7052, and apply only for purposes of this Final Order, and shall take effect and be fully enforceable immediately upon execution hereof.

15. **Retention of Jurisdiction.** The Bankruptcy Court has and will retain exclusive jurisdiction to enforce this Final Order and adjudicate all disputes related to the DIP Facility Documents according to their terms.

Signed on 9/11/2025

_____
THE HONORABLE JOSHUA P. SEARCY
UNITED STATES BANKRUPTCY JUDGE