IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| IN RE: | § § § | |
| **Premier Lumber Company Inc.,** *et al.*[1] | § § | **JOINTLY ADMINISTERED** Under Case No. 25-10295 |
| Debtors. | § § § § | Chapter 11 |

**PLAN OF REORGANIZATION
UNDER SUBCHAPTER V**

Premier Lumber Company, Inc. and TexStar Lumber, Inc., the debtors-in-possession in the above-captioned jointly-administered bankruptcy case, propose this *Plan of Reorganization under Subchapter V*.

**TABLE OF CONTENTS**

| | | |
|---|---|---|
| I. | Definitions | 2 |
| II. | Debtor Background/Financial Information | 3 |
| III. | Summary of Plan | 7 |
| IV. | Treatment of Administrative Expense Claims and Priority Tax Claims | 8 |
| V. | Classification and Treatment of Claims and Interests | 10 |
| VI. | Allowance and Disallowance of Claims | 13 |
| VII. | Treatment of Executory Contracts and Unexpired Leases | 13 |
| VIII. | Means for Implementation of the Plan | 14 |
| IX. | Effect of Confirmation and Releases | 14 |
| X. | Discharge | 15 |
| XI. | Reservation of Rights | 15 |
| XII. | Default | 16 |
| XIII. | General Provisions | 16 |
| XIV. | Notices | 19 |

---

[1] The jointly-administered Chapter 11 Debtors, along with the last four digits of each such Debtors' federal tax identification number, are: Premier Lumber Company, Inc. (9451); and TexStar Lumber, Inc. (1243). Unless otherwise noted, all docket entries referenced here in refer to Case No. 25-19205 ("Premier's Case"). Case No. 25-10296 shall be referred to herein as the "TexStar Case."

1

## I. **DEFINITIONS**

The following terms, when used in the Plan, shall, unless the context otherwise requires, have the following meanings, respectively:

1. "Administrative Expense Claim" shall mean a Claim that is allowed pursuant to Section 503 of the Bankruptcy Code.

2. "Allowed Claim" shall mean, any Claim (a) that has been listed by the Debtors in their Schedules D or Schedules E/F as liquidated in amount and not "disputed" or "contingent" and that has not been supplanted by a proof of claim filed by the scheduled Creditor in the Chapter 11 Case, (b) that is established by a timely filed proof of claim in the Chapter 11 Case to which no objection or request for estimation has been filed on or before the Effective Date, or (c) that has been allowed by a final order of the Court.

3. "Allowed _____ Claim" shall mean an Allowed Claim of the type described.

4. "Bankruptcy Code" or the "Code" shall mean the United States Bankruptcy Code.

5. "Bankruptcy Rules" shall mean the Federal Rules of Bankruptcy Procedure.

6. "Chapter 11 Case" shall mean the captioned case under Chapter 11 of the Bankruptcy Code commenced by the Debtors in the Court.

7. "Claim" shall mean any claim (as that term is defined in 11 U.S.C. § 101(5)) against the Debtors.

8. "Claims Bar Date" shall mean the deadline for filing Claims against the Debtors in the Chapter 11 Case, which was September 8, 2025, for non-governmental claimants, and is December 29, 2025, for governmental claimants.

9. "Class" shall mean any class into which Claims are classified in this Plan.

10. "Confirmation" shall mean the Court's entry of an order confirming the Plan.

11. "Court" shall mean the United States Bankruptcy Court for the Eastern District of Texas, Beaumont Division, presiding over the captioned bankruptcy case.

12. "Creditor" shall have the same meaning as its given by 11 U.S.C. § 101(10).

13. "Debtors" shall mean Premier Lumber Company, Inc. and TexStar Lumber, Inc.

14. "Disputed Claim" shall mean a Claim, or any portion thereof: (a) which is listed in the Schedules as disputed, contingent or unliquidated; or (b) as to which (i) a Proof of Claim has been filed, (ii) an objection, or request for estimation, has been timely filed (and not withdrawn) by the Debtors or any other party-in-interest, and (iii) no final order has been entered thereon.

15. "Effective Date" shall mean the first day of the month following twenty days from the date of Confirmation.

16. "Petition Date" shall mean June 30, 2025, the date Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code and made Subchapter V elections.

17. "Plan" shall mean this *Plan of Reorganization Under Subchapter V* in its present form or as it may be amended, altered, varied, or modified from time to time.

18. "Priority Claim" shall mean a Claim entitled to priority under 11 U.S.C. § 507(a)(3)-(8).

19. "Reorganized Debtor" shall mean the Debtors, as reorganized pursuant to this Plan. Specifically, Debtors shall be substantially consolidated into Premier Lumber Company Inc.

20. "IRS" shall mean the United States Internal Revenue Services.

21. "Secured Claim" shall mean the Claim of any Creditor secured by a lien or liens on property of a Debtor, which lien and/or liens are valid, perfected, and enforceable under applicable law, and are not subject to avoidance under the Code or other applicable non-bankruptcy law, and are duly established in this case, to the extent of the value of the security, as determined in accordance with 11 U.S.C. § 506.

22. "Subchapter V Trustee" shall mean Behrooz P. Vida, the appointed Subchapter V trustee in the Chapter 11 Case.

23. "Unsecured Claim" shall mean a claim that is not an Administrative Claim, a Priority Claim, or a Secured Claim.

## II.    DEBTOR BACKGROUND/FINANCIAL INFORMATION

**2.1    Legal Structure and Ownership**

Debtors were formed in 2021 and began operations in approximately May of 2022. Debtors own a sawmill business that operates as a joint venture. Debtors are each a "small business debtor" as the term is defined under Section 101(51D) of the Bankruptcy Code.

**2.2    History and Nature of Debtors' Business**

Premier Lumber owns the real property located at 5925 FM 1003 S, Kountze, Texas 77625, which consists of a 33.53-acre lot on which the sawmill facility, and all improvements thereon, is located (collectively, the "Sawmill"). The Sawmill houses the equipment used to operate the Debtors' business (the "Equipment"), which was used to produce the Debtors' revenues prior to the forced cessation of the Debtors' business operations (detailed below).

TexStar runs the Debtors' day-to-day operations, and previously employed workers to operate the Sawmill.

**2.3    Events Leading to the Chapter 11 Cases**

   A.    *Byline Bank Loan (approx. $1.5 million)*

In September 2023, the Debtors took a term loan and a revolving loan in the principal amounts of $1,335,000 and $165,000, respectively (collectively, the "Byline Loans"), from Byline Bank, which are guaranteed by the U.S. Small Business Administration ("SBA").

The Byline Loans were used, in part, to purchase the Sawmill and the Equipment. Byline Bank asserts a blanket lien on all of Debtors' prepetition assets, including a mortgage and/or security interest(s) in the Sawmill and the Equipment.

As of the Petition Date, the Debtors' total prepetition indebtedness to Byline Bank is estimated to be $1,487,485.00.

   B.    *Kadana USA Inc. Loan ($625,000.00)*

On or around June 2023, the Debtors obtained a loan with Kadana USA Inc. ("Kadana") in the amount of $625,000.00 ("Kadana Loan").

Kadana's security interest is subordinate to Byline Bank's security interest, thereby making Kadana the junior lender.

   C.    *Operational Challenges*

Prior to the Petition Date, the Debtors experienced numerous operational issues, which necessitated the filing of these Cases, including, without limitation, numerous floods and weather events such as Hurricane Beryl on July 8, 2024. These unforeseen "Acts of God" have damaged the Debtors' Equipment and crippled the Debtors' ability to operate the Sawmill. For example, the Debtors have dealt with damaged electricity cables, which were repaired after the Petition Date. The Debtors continue to deal with needed repairs to the Sawmill equipment, which had rendered the Sawmill nonoperational.

Debtors are also dealing with inadequate infrastructure, as well as nonperformance of contractors to rectify that infrastructure. These issues created substantial liquidity problems for the Debtors, which prevented them from acquiring inventory to operate the Sawmill.

   D.    *Defaults and Lawsuits*

Because of their lack of working capital and inability to restart the Sawmill's operations, the Debtors defaulted on all their outstanding loan obligations. This also resulted in Debtors being

named as defendants in four (4) different lawsuits—one of which resulted in a default judgment and an appeal.

The Debtors felt compelled to file for bankruptcy relief because the Debtors' pre-petition lender, Byline Bank, posted the Sawmill for a foreclosure sale scheduled for July 1, 2025. Such foreclosure would have made it impossible for the Debtors to ever repay their debts and other financial obligations.

*E. Tax Debt*

In addition to all the foregoing, the IRS has filed several tax liens relating to 941 taxes (i.e., payroll taxes) on the Debtors' real property, which amount to at least $200,743.37, and consists of the following:

      i.    $76,446.76 (Doc. No. 24-0002379623, filed on 01/16/2024);

     ii.    $58,199.91 (Doc. No. 24-0023910091, filed 3/25/2024); and

    iii.    $66,096.70 (Doc. No. 24-002852279, filed on 4/22/2024).

The IRS also asserts a tax penalty of $125,000.00 related to the above tax liabilities.

**2.4    Filing of the Chapter 11 Case**

On June 30, 2025, Debtors each filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code and made a Subchapter V election. On July 1, 2025, Debtors filed a motion for joint administration [Doc. No. 7]. That motion was amended on the same day [Doc. No. 9]. On July 3, 2025, the Bankruptcy Court entered an order granting the motion for joint administration [Doc. No. 23].

Debtors' Schedules of Assets and Liabilities are available at Doc. No. 47 in Premier's Case and Doc. No. 28 in TexStar's Case (together, the "Schedules"), and Debtors' Statement of Financial Affairs are available at Doc. No. 48 in Premier's Case and Doc. No. 29 in TexStar's Case (together, the "SOFAs").

**2.5    Significant Events During the Chapter 11 Case**

*A.    General Procedural Background / Relevant Pleadings*

On July 1, 2025, the Debtor filed a *Motion for Entry of Interim and Final Orders (I) Authorizing Debtors' to Obtain Post-Petition Financing, (II) Granting Liens and Superpriority Claim; and (III) Scheduling a Final Hearing Pursuant to 11 U.S.C. §105, 362, and 364(c); and Federal Rule of Bankruptcy Procedure 4001(c)* (the "DIP Financing Motion") [Doc. No. 12]. The DIP Financing Motion was amended on July 2, 2025, at Doc. No. 18.

An emergency hearing on the DIP Financing Motion was held on July 3, 2025. The

5

Bankruptcy Court entered an *Interim Order Granting the DIP Financing Motion* [Doc. No. 28]. The Bankruptcy Court set a final hearing on the DIP Financing Motion for July 29, 2025. That hearing was continued until September 9, 2025. On September 11, 2025, the Bankruptcy Court entered a *Final Order Granting the DIP Financing Motion* [Doc. No. 63].

The Subchapter Trustee was appointed on July 2, 2025 [Doc. No. 16].

On July 24, 2025, an Application to Employ Kean Miller as Debtors' counsel was filed [Doc. No. 40]. The Court entered an Order granting the Application on August 15, 2025 [Doc. No. 53].

On July 30, 2025, the Debtors filed the required Schedules and Statement of Financial Affairs [Doc. Nos. 47 & 48 in Premier's Case and Doc. Nos. 28 & 29 in TexStar's Case].

On August 6, 2025, the Debtors attended the 341 Meeting of the Creditors, and such 341 Meeting was concluded on the same day.

The Debtors filed their first monthly operating reports on August 21, 2025 [Doc. No. 56 in Premier's Case and Doc. No. 32 in TexStar's Case]. The Debtors filed their second monthly operating report on September 23, 2025 [Doc. No. 66 in Premier's Case and Doc. No. 33 in TexStar's Case]. As of the filing of this plan, Debtors are current with filing its monthly operating reports.

**2.6    Liquidation Analysis**

To confirm this Plan, the Court must find that all holders of Allowed Claims who do not accept this Plan will receive at least as much under the Plan as such holders would receive in a Chapter 7 liquidation. A Liquidation Analysis is attached hereto as **Exhibit A**.

The Liquidation Analysis reveals that in a hypothetical Chapter 7, Debtors' general unsecured creditors would not receive a distribution. This Plan proposes to pay holders of Allowed Unsecured Claims from the Reorganized Debtor's projected disposable income as set forth in the projected financial information attached hereto as **Exhibit B.**

Because the amount that creditors would receive in a Chapter 7 liquidation is less than what they will receive under this Plan, the best interest of creditors test set forth in Section 1129(a)(7) of the Bankruptcy Code is satisfied.

**2.7    Feasibility/Projections**

Debtors must show that they will have enough cash over the life of the Plan to make required Plan payments and operate the Reorganized Debtor's business. The Debtors have provided projected financial information on **Exhibit B.** The financial projections are based on historical data, current performance, and management's experience.

Based on the projections, the Reorganized Debtor expects to have sufficient future income

to perform under the Plan. Accordingly, this Plan satisfies the "feasibility" requirement under Section 1129(a)(11) of the Bankruptcy Code. Additionally, the Reorganized Debtor's disposable income, as that term is defined by Section 1191(d) of the Bankruptcy Code, over the period described in Section 1191(c)(2) of the Bankruptcy Code, will be committed to the payment of Allowed Claims.

**2.8   Avoidable Transfers**

The Debtors have not yet completed their investigation with regard to prepetition transactions. The Debtors anticipate completing their investigation within 60 days after the Effective Date. If you received payment or other transfer of property that is fraudulent, preferential, or otherwise avoidable under the Bankruptcy Code, the Debtors may seek to avoid such transfer.

### III.   SUMMARY OF PLAN

This Chapter 11 Case was commenced under Subchapter V of the Bankruptcy Code. Subchapter V enables small business debtors such as the Debtors to more effectively reorganize in Chapter 11.

Under this Plan, the Reorganized Debtor intends to distribute cash generated from their operations to holders of Allowed Claims. This Plan provides for the treatment of claims and interests as follows, and as more fully described herein:

- Six classes of priority claims: **Class 2-1** – the IRS; **Class 2-2** – the IRS; **Class 2-3** – the IRS; **Class 2-4** – Texas Workforce Commission; **Class 2-5** – Hardin County; **Class 2-6** – Randall Washington, Kalidasan Ramakrishnan, Zain Zubair, Mohamed Zubair Abdul Aleem. Classes 2-1 through 2-5 will be paid in full over 12 months with statutory interest as required by 11 U.S.C. 1129(a)(9)(C). Class 2-6 will be paid in full in equal monthly payments over 60 months.

- Five classes of Secured Claims: **Class 3-1** – Byline Bank; **Class 3-2** – Byline Bank; **Class 3-3** – Kadana USA, Inc.; **Class 3-4** – H&E Equipment Services; **Class 3-5** – Corporation Service Company. Classes 3-1 and 3-2 will be paid in accordance with the existing agreement(s) between the Debtors and the Secured Creditor until paid in full. Classes 3-3 through 3-5 are wholly unsecured and will be treated under Class 4.

- One class of Unsecured Claims: **Class 4** - General Allowed Unsecured Claims, which shall receive pro rata distributions from payments made by the Debtors to the unsecured creditor's pool from the Debtors' disposable income.

- Equity Interest: **Class 5** – Karthick Chandrasekaran, the Debtors' sole equity interest holder, will have his ownership interests in the Debtors canceled.

**All holders of Claims should refer to Articles IV and V of this Plan for information regarding the precise treatment of their claims.**

In addition, the Debtors anticipates that they will owe the following Administrative Expense Claims (subject to allowance by the Court), which will be paid in full upon the later of the Effective Date or Court approval, or under such other terms as agreed to by the holder of the Allowed Administrative Expense Claim:

- Kean Miller LLP, attorney for the Debtors, in the estimated amount of **$275,000** (estimated unpaid fees);

- Behrooz Vida, Subchapter V Trustee, in the estimated amount of **$8,000**.[2]

**ALL CLAIMS FOR ADMINISTRATIVE EXPENSES MUST BE NOTICED FOR HEARING AND ARE SUBJECT TO REVIEW AND APPROVAL BY THE BANKRUPTCY COURT.**

The last day to file an application for allowance of an Administrative Expense Claim is the twenty-eighth (28th) calendar day after the Effective Date. Any application for allowance of an Administrative Claim that is not timely filed shall be deemed waived and barred as a Claim against the Debtors.

### IV.    TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS AND PRIORITY TAX CLAIMS

Under Section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims and priority tax claims are not in classes. The administrative expense claimants and priority tax claimants are not entitled to vote on the Plan.

**4.1    Administrative Expense Claims**

| **Administrative Expense Claimant** | **Treatment of Administrative Expense Claim** |
|---|---|
| **Kean Miller LLP,** <br> **Counsel for the Debtors** | The Debtors estimate that the estimated administrative expense claim of Kean Miller LLP will be $275,000.00. On the Effective Date, Prime Tex Lumber, LLC, who is the Debtors' DIP lender, shall pay to Kean Miller $75,000 as contemplated in the DIP Financing Agreement. The remainder of this claim will be paid in full on the later of the Effective Date or Court approval, or under such other terms as may be agreed upon by Kean Miller and the Debtors. |

---

[2] This assumes that the Chapter 11 Case will be confirmed within 8 months.

|  | As set forth in the projections attached as **Exhibit B, by agreement,** this claim will be paid out of the Reorganized Debtor's monthly disposable income until paid in full. For avoidance of doubt, this claim will be paid in full before the Allowed Unsecured Claims receive any distribution under the Plan. |
|---|---|
| **Behrooz Vida, Subchapter V Trustee** | The Debtors estimates that the administrative expense claim of Behrooz Vida will be $8,000.00. This claim will be paid in full on the later of the Effective Date or Court approval, or under such other terms as may be agreed upon by the Subchapter V Trustee and the Debtors.[3]<br><br>**As set forth in the projections attached as Exhibit B,** by agreement and Court Order, this claim will be paid out of the Debtors' monthly disposable income until paid in full. For avoidance of doubt, this claim will be paid in full before Allowed Unsecured Claims receive any distribution under the Plan. |

**4.2  Priority Claims**

Notwithstanding anything in this Plan or in the Confirmation Order to the contrary, the following provisions apply to all Priority Tax Claims under 4.2 of this Plan. The Priority Tax Claims make up Classes 2-1 through 2-5. These classes are unimpaired.

Priority Tax Claims are also Secured Claims under 11 U.S.C. § 506 and are entitled to first priority as provided under applicable non-bankruptcy law. Any and all ad valorem tax liens securing prepetition and postpetition taxes shall be retained until all such taxes are paid in full. The Reorganized Debtors shall keep current all postpetition ad valorem tax liabilities (2025 and subsequent years) in the ordinary course, prior to delinquency, with any default subject to applicable nonbankruptcy law, including immediate collection actions in state court, without further notice of order from the Bankruptcy Court. No administrative expense claim or a request for payment is required for payment of any postpetition taxes.

---

[3] The Debtors are currently paying the Subchapter V Trustee monthly payments in the amount of $1,000. To the extent such monthly payments do not pay the Subchapter V Trustee's claim in full, the Subchapter V Trustee will be paid as set forth in the Plan.

|       | **Priority Tax Claimant** | **Treatment of Priority Tax Claim** |
|-------|---------------------------|-------------------------------------|
| 2-1.  | IRS | This claim is for unpaid Federal taxes in the amount of $76,446.76. This claim will be paid in 12 equal monthly installments beginning on the first month after the Effective Date. The claim will be paid in full with 12% interest accruing from the Petition Date. |
| 2-2.  | IRS | This claim is for unpaid Federal taxes in the amount of $58,199.91. This claim will be paid in 12 equal monthly installments beginning on the first month after the Effective Date. The claim will be paid in full with 12% interest accruing from the Petition Date. |
| 2-3.  | IRS | This claim is for unpaid Federal taxes in the amount of $66,096.70. This claim will be paid in 12 equal monthly installments beginning on the first month after the Effective Date. The claim will be paid in full with 12% interest accruing from the Petition Date. |
| 2-4.  | Texas Workforce Commission | This claim is for unpaid workers compensation premiums in the amount of $15,259.50. This claim will be paid in 12 equal monthly installments beginning on the first month after the Effective Date. The claim will be paid in full with 12% interest accruing from the Petition Date. |
| 2-5.  | County of Hardin | This claim is for unpaid property taxes in the amount of $21,572.99. This claim will be paid in 12 equal monthly installments beginning on the first month after the Effective Date. The claim will be paid in full with 12% interest accruing from the Petition Date. |
|       | **TOTAL** | **$237,575.86** |

## V. CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

The Plan places claims and equity interests in various classes and describes the treatment of each class as set forth below. The Plan also states whether each class of claims or equity interests is impaired or unimpaired. A claim or equity interest is impaired if the Plan alters the legal, equitable or contractual rights to which the claimants or equity holders are otherwise entitled. If the Plan is confirmed, each creditor's and equity holder's recovery is limited to the amount provided in the Plan.

Only creditors in classes that are impaired may vote on whether to accept or reject the Plan, and only creditors holding Allowed Claims may vote. A class accepts the Plan when more

10

than one-half (1/2) in number and at least two-thirds (2/3) in dollar amount of the Allowed Claims that actually vote, vote in favor of the Plan. Also, a class of equity interest holders accepts the Plan when at least two-thirds (2/3) in amount of the allowed equity interest holders that actually vote, vote in favor of the Plan. A class that is not impaired is deemed to accept the Plan.

The claims and equity interests shall be treated as follows under the Plan:

**5.1  Secured Claims – Classes 3-1 through 3-2:**

| Class #/Claimant | Impairment | Description and Treatment |
|---|---|---|
| **Class 3-1 – Byline Bank** | Yes | Claim Amount: $1,635,038.71<br><br>This claim is secured by the real property located at 5925 FM 1003 S, Kountze, Texas 77625, all goods, inventory, equipment, accounts, and chattel paper.<br><br>This claim will be paid in accordance with the existing agreement(s) between Debtors and Creditor until paid in full. Paragraph 4H of the agreement is deleted and Debtors shall be declared in nondefault status upon confirmation. Creditor shall not declare a default for any event that occurred prior to the Effective date. |
| **Class 3-2 – Byline Bank** | Yes | Claim Amount: $188,956.18<br><br>This claim is secured by all goods, inventory, equipment, accounts, and chattel paper.<br><br>This claim will be paid in accordance with the existing agreement(s) between Debtors and Creditor until paid in full. Paragraph 4H of the agreement is deleted and Debtors shall be declared in nondefault status upon confirmation. Creditor shall not declare a default for any event that occurred prior to the Effective date. |
| **Class 3-3 – Kadana USA, Inc.** | Yes | Claim Amount: $625,000<br><br>While Kadana's loan documents purport to grant it a lien on substantially all of Debtors' assets, the value of such collateral does not support treating Kadana's claim as an Allowed Secured Claim. Accordingly, Kadana's claim shall be treated as an Allowed General Unsecured Claim and shall be paid in accordance with Class 4 of the Plan. |

| | | |
|---|---|---|
| **Class 3-4 – H&E Equipment Services, Inc.** | Yes | Claim Amount: $45,937.00<br><br>While H&E's loan documents purport to grant it a lien on substantially all of Debtors' assets, the value of such collateral does not support treating H&E's claim as an Allowed Secured Claim. Accordingly, H&E's claim shall be treated as an Allowed General Unsecured claim and shall be paid in accordance with Class 4 of the Plan. |
| **Class 3-5 – Corporation Service Company** | Yes | Claim Amount: $0.01<br><br>While Corporation Service Company's loan documents purport to grant it a lien on substantially all of Debtors' assets, the value of such collateral does not support treating Corporation Service Company's claim as an Allowed Secured Claim. Accordingly, Corporation Service Company's claim shall be treated as an Allowed General Unsecured claim and shall be paid in accordance with Class 4 of the Plan. |

5.2   **Unsecured Claims – Class 4**

| **Class #/Claimant** | **Impairment** | **Description and Treatment** |
|---|---|---|
| **Class 4 – General Unsecured Claims** | Yes | Pro Rata distribution from unsecured creditor pool paid following payment of all allowed administrative expense and priority claims. This class will be paid in full with no interest over 36 months with payments beginning in the seventh month after the Effective Date or the month following when the Reorganized Debtor's cash reserves reach $500,000, whichever is later. After the initial payment, the Reorganized Debtor shall make at least one payment to this class every three months.<br><br>Exhibit B shows the Reorganized Debtor making monthly payments of $69,609.66 beginning in the seventh month. This is one hypothetical scenario. Exhibit B in no way obligates the Reorganized Debtor to begin making payments at that time in that amount. The Reorganized Debtor may begin payments at a different date and in a different amount provided that it begins making payments as |

|  |  | outlined above and creditors are paid in full no later than 36 months after the Effective Date. The Reorganized Debtor may pay unsecured creditors in full earlier than 36 months, with no penalty, if it so chooses. |
|---|---|---|

**5.3    Equity Interest – Class 7**

| **Class #/Claimant** | **Impairment** | **Description and Treatment** |
|---|---|---|
| **Class 5 – Equity Holders** | Yes | The interests of Equity Holders of the Debtors will be canceled upon the Effective date. New shares in the Reorganized Debtor will be issued, with 100% of those shares going to Prime Tex Lumber, LLC. |

**5.4    Voting Procedures** – Classes 2.6, 3-1 through 3-6, 4 and 5 are impaired as defined by Section 1124 of the Bankruptcy Code. The Debtors are seeking the acceptance of the Plan by Claimants in such Classes. Each holder of an Allowed Claim in these classes may vote on the Plan by completing, dating, and signing the ballot sent to the holder, and returning it to the Debtors' counsel as set forth below:

- The ballot must be returned to Lloyd A. Lim, Kean Miller LLP, 711 Louisiana St., Suite 1800, Houston, Texas 7002 or via email at Lloyd.Lim@Keanmiller.com. In order to be counted, ballots must be RECEIVED no later than at the time and on the date stated on the ballot.

## VI.    ALLOWANCE AND DISALLOWANCE OF CLAIMS

**6.1    Delay of Distribution on Disputed Claim/Escrow** – No distribution will be made on account of a Disputed Claim unless such claim is allowed by a final order of the Court. Any amounts to be distributed on the account of a Disputed Claim shall be placed in escrow pending allowance or disallowance by the Court.

**6.2    Settlement of Disputed Claims** – The Debtors will have the power and authority to settle and compromise a Disputed Claim with Court approval and in compliance with Rule 9019 of the Bankruptcy Rules.

**6.3    Treatment Once Allowed** – If a Disputed Claim is Allowed in accordance with this Plan, it shall receive treatment in accordance with the classes set forth in Article V above. In the event that a Disputed Claim or portion of a Disputed Claim is not Allowed, the escrowed funds allocated to that Disputed Claim or portion of the Disputed Claim that is disallowed shall be distributed *pro rata* among Allowed General Unsecured Claims.

## VII.    TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

There were no executory contracts and unexpired leases listed on the Debtors' Schedule G

[Doc. No. 47]. All other executory contracts to which the Debtors are a party are being rejected upon Confirmation.

## VIII.  MEANS FOR IMPLEMENTATION OF THIS PLAN

The Reorganized Debtor will continue to operate its business and is authorized to take any actions it deems necessary to operate same. The Plan will be funded from the Reorganized Debtor's disposable income earned from the Debtor's operations. To date, the Debtors have filed monthly operating reports for July 2025 through August 2025.

The Debtors base their projected disposable income (*see* **Exhibit B**) on historical data, current performance, and the management's experience. As shown on **Exhibit B**, the Reorganized Debtor's total anticipated revenue from February 2026 through February 2029 exceeds its projected costs and expenses generating a projected disposable income, which disposable income as projected will be used to fund the Plan.

The Reorganized Debtor shall serve as the disbursing agent under this Plan, whether the Plan is confirmed under Section 1191(a) (consensual confirmation) or Section 1191(b) (non-consensual confirmation) of the Bankruptcy Code. The Reorganized Debtor shall provide the Subchapter V Trustee and the US Trustee with quarterly reports of all distributions made pursuant to the Plan for the preceding three months, which reports shall indicate the date, amount, and payee for each distribution. The first report shall be due on three months after the Effective Date.

To the extent that the Subchapter V Trustee incurs any fees and expenses post-confirmation for review of the distribution reports, he shall file a Notice of Fees and Expenses Incurred with 14-day notice to parties in interest. If there is no objection, the Reorganized Debtor shall remit payment to the Subchapter V Trustee. To the extent there is an objection, the Reorganized Debtor shall remit payment to the Subchapter V Trustee in whatever amount is ultimately approved by the Court.

## IX.  EFFECT OF CONFIRMATION AND RELEASES

Upon Confirmation, TexStar LLC shall be substantially consolidated with Premier Lumber Company, Inc.  Premier Lumber Company shall assume all liabilities and acquire all property of TexStar.  All such assumed liabilities and property are subject to the terms of this Plan.

All consideration provided pursuant to this Plan shall be in exchange for and in complete satisfaction and release of all Claims, of any nature whatsoever, against the Debtors and Reorganized Debtor and/or any property of the Debtors, the Reorganized Debtor, or their bankruptcy estates. Notwithstanding the foregoing, the Reorganized Debtor's obligations specifically provided for under this Plan shall not be released and will survive Confirmation. Upon Confirmation, all property of the Debtors and the Reorganized Debtor, whether tangible or intangible, will be free and clear of all Claims, liens, charges, and any other encumbrances, except as provided in the Plan. The provisions of the Plan shall bind all Creditors of the Debtors, even if the Creditor did not accept this Plan. The rights and obligations of any entity affected under this Plan will be binding upon and will inure to the benefit of the successors or assigns of such entity.

14

Upon Confirmation, all Creditors scheduled by the Debtors may not take any action to commence or continue any judicial, administrative, or other legal action or proceeding against: (i) Mohamed Zubair Abdul Aleem; (ii) Zain Zubair; (iii) Karthick Chandrasekaran; or (iv) Shabana Mohamed Zubair (together the "<u>Guarantors</u>"). Creditors are also prohibited from taking any action to collect, assess, or recover any Claims against Guarantors, and may not seek to enforce any Claims they may hold against Guarantors until the earlier of: (i) the completion of the payments provided to Class 4; or (ii) a default under the Plan.

Nothing in the Confirmation Order or the Plan shall effect a release of any claim by the United States Government or any of its agencies or any state and local authority whatsoever, including without limitation any claim arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state and local authority against any party or person, nor shall anything in the Confirmation Order or the Plan enjoin the United States or any state or local authority from bringing any claim, suit, action, or other proceedings against any party or person for any liability of such persons whatever, including without limitation any claim, suit or action arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state and local authority against such persons, nor shall anything in the Confirmation Order or the Plan exculpate any party or person from any liability to the United States Government or any of its agencies or any state and local authority whatsoever, including any liabilities arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state and local authority against any party or person.

## X.   **DISCHARGE**

If the Plan is confirmed under Section 1191(a) of the Bankruptcy Code, upon Confirmation, the Debtors will be discharged from any debt that arose before Confirmation, subject to the occurrence of the Effective Date, to the extent specified in Section 1141(d) of the Bankruptcy Code.

If the Plan is confirmed under Section 1191(b) of the Bankruptcy Code, as soon as practicable after completion by the Reorganized Debtor of all payments due under the Plan, the Court shall grant the Debtors and/or the Reorganized Debtor a discharge of all debts provided in Section 1141(d)(1)(A) of the Bankruptcy Code, and all other debts allowed under Section 502 of the Bankruptcy Code and provided for in this Plan, except for as otherwise provided in Section 1192 of the Bankruptcy Code.

## XI.   **RESERVATION OF RIGHTS**

Prior to the Effective Date, no provision of this Plan, nor any statement or provision contained herein, nor the taking of any action with respect to the Plan by the Debtors shall: (i) be deemed to be an admission against interest; and (ii) or be deemed to be a waiver of any rights which the Debtors might have against a Creditor. If the Effective Date does not occur, neither the Plan nor any statement contained therein may be used or relied upon in any matter in any suit, action, proceeding or controversy within or outside of this bankruptcy case.

**All claims and causes of action that are not specifically released under this Plan, including, but not limited to, claims for the avoidance and recovery of pre-petition transfers under Chapter 5 of the Bankruptcy Code, are hereby reserved to be prosecuted by the Reorganized Debtor post-Confirmation.**

## XII.   DEFAULT

This Article shall only apply if this Plan is confirmed pursuant to Section 1191(b) of the Bankruptcy Code. Under Section 1191(c)(3)(B) of the Bankruptcy Code, if the plan is confirmed on a non-consensual basis, the Debtors are required to "provide appropriate remedies" to protect the holders of claims or interests in the event that payments are not made.

If there is any default under the Plan, a Creditor under the Plan may file a notice of default. If the default is not cured within 30 days of a notice of default being filed with the Court, the Creditor may seek any rights available to it under the Plan and under applicable law.

## XIII.   GENERAL PROVISIONS

**13.1**   **Retention of Jurisdiction by the Court** – The Court shall retain jurisdiction of this Case with regard to the following matters: (i) to make such orders as are necessary or appropriate to implement the provisions of this Plan and to resolve any disputes arising from implementation of the Plan, including adjudicating any adversary proceedings or contested matters related to defaults under the Plan; (ii) to rule on any modification of the Plan proposed under Section 1193 of the Bankruptcy Code; (iii) to hear and allow all applications for compensation to professionals and other Administrative Claims; (iv) to resolve all issues regarding Claims objections, and any issues arising from the assumption/rejection of executory contracts or unexpired leases, and (v) to adjudicate any cause of action which the Debtors may own, including preference and fraudulent transfer causes of action.

**13.2**   **Claims Bar Date** – Claims which are not actually filed by the Claims Bar Date will be forever barred and/or released from assertion against the Debtors, the Reorganized Debtor, or property of their bankruptcy estate, unless the Claim is listed on the Debtors' Schedules and is not listed as disputed, contingent, or unliquidated as to amount and as to which no objection has been filed.

**13.3**   **Corporate Governance** – The Reorganized Debtor shall continue to be governed in accordance with their pre-petition organizational documents.

**13.4**   **Distributions** – If any distribution is returned undeliverable or remains unclaimed after thirty days of the distribution date, no further distributions to the applicable holder shall be made unless and until the Reorganized Debtor, as distribution agent, is notified in writing of such holder's then-current address, and after the distribution agent makes a reasonable attempt to contact the claim holder. Such holders of returned and/or unclaimed distributions shall be automatically discharged and forever barred, notwithstanding any federal or state escheat laws to the contrary. Any funds that are returned to the distribution agent or not

timely presented for payment within thirty days of the issue date, shall be used by the distribution agent to make additional distributions pursuant to the terms of the Plan.

**13.5** **Subchapter V Trustee's Services** – If this Plan is confirmed on a consensual basis, the Subchapter V Trustee's services will be terminated when this Plan is substantially consummated, and Section 1194 of the Bankruptcy Code does not contemplate the Subchapter V Trustee will make the Plan distributions.

However, as provided hereinabove, even if this Plan is confirmed under Section 1191(b) of the Bankruptcy Code, the Reorganized Debtor, not the Subchapter V Trustee, will be responsible for making distributions under this Plan.

**13.6** **Consensual Confirmation** – If all applicable requirements of Section 1129(a) of the Bankruptcy Code are met except for the projected disposable income rule of Section 1129(a)(15) – which applies to individual debtors – Section 1191(a) of the Bankruptcy Code requires the Court to confirm this Plan.

**13.7** **Non-consensual Confirmation** – Under Section 1191(b) of the Bankruptcy Code, confirmation is permitted even if the requirements of Sections 1129(8), (10) and (15) of the Bankruptcy Code are not met. Thus, cramdown does not require that: (i) all impaired classes accept the plan; or (ii) at least one impaired class accepts the plan. Instead, Section 1191(b)'s cramdown rules permit confirmation even if all impaired classes do not accept the plan. Therefore, if all other confirmation standards are met, the Court must confirm the Plan, on the request of the Debtors, if, with respect to each impaired class that has not accepted it, the Plan: (i) does not discriminate unfairly; and (ii) is fair and equitable.

**13.8** **Post-Confirmation Automatic Stay** – If the Debtors' Plan is consensually confirmed under Section 1191(a) of the Bankruptcy Code, the bankruptcy automatic stay terminates upon Confirmation. If the Debtors' Plan is non-consensually confirmed under Section 1191(b) of the Bankruptcy Code, the automatic stay will remain in place until such time as the case is closed.

**13.9** **Effective Date, Substantial Consummation and Final Decree** – The Debtors shall file with the Court a Notice of Occurrence of the Effective Date on the Effective Date or as soon as practicable thereafter.

Once the Debtors' bankruptcy estates' have been fully administered, as provided in Bankruptcy Rule 3022, the Debtors shall file a notice of substantial consummation with the Court along with a motion to obtain a final decree to close the Case. Alternatively, the Court may enter such a final decree on its own motion.

**13.10** **Applicable Law** – Unless a rule of law or procedure is supplied by Federal law, including the Bankruptcy Code or the Bankruptcy Rules, the laws of the State of Texas govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

**13.11** **Severability** – If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

**13.12** **Successors & Assigns** – The rights, benefits, and obligations of any entity named or referred to in the Plan shall be binding on and shall inure to the benefit or detriment of any heir, executor, successor or assign, officer, manager, director, agent, representative, beneficiary, or guardian, if any, of each entity.

[*Continued to Next Page.*]

## XIV. NOTICES

Notices to the Debtors and Reorganized Debtor may be sent by United States first class mail to:

Premier Lumber Company, Inc.
5925 FM1003 Rd. S.
Kountze, TX 77625

With a copy by e-mail to:

Kean Miller LLP
c/o Lloyd A. Lim
711 Louisiana Street
Suite 1800
Houston, Texas 77002
Lloyd.Lim@KeanMiller.com

By: */s/* Karthick Chandrasekaran
Name: Karthick Chandrasekaran
Dated: September 29, 2025

                SUBMITTED BY:

                KEAN MILLER LLP

                By: */s/ Lloyd A. Lim*
                Lloyd A. Lim
                Texas State Bar No. 24056871
                Lloyd.Lim@keanmiller.com
                Rachel T. Kubanda
                Texas State Bar No. 24093258
                Rachel.Kubanda@keanmiller.com
                711 Louisiana Street, Suite 1800
                Houston, Texas 77002
                Telephone: (713) 844-3000
                Telecopier: (713) 844-3030